UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NEW CINGULAR WIRELESS P C S L L C** | **CASE NO. 2:22-CV-06025** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CITY OF JENNINGS ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court are cross-motions for summary judgment [docs. 15, 18] filed under Federal Rule of Civil Procedure 56 by, respectively, plaintiff New Cingular Wireless, PCS, LLC d/b/a AT&T Mobility ("AT&T") and defendants the City of Jennings, Louisiana, and Philip Arceneaux in his official capacity as City Inspector. Both motions are opposed. Docs. 17, 21.

**I.**
**BACKGROUND**

This suit arises from AT&T's efforts to site a wireless telecommunications tower in the city of Jennings, Louisiana. AT&T filed an application for rezoning with the city on May 25, 2022, seeking appropriate permitting for the construction of an 80-foot monopole tower with a 5 foot lightning rod on property located at 1737 North Cutting Avenue. Doc. 15, att. 2, pp. 2, 8–10. The city's zoning board recommended approval and the ordinance to rezone (Ordinance No. 1787) was introduced at the city council's regular meeting on July 12, 2022. *Id.* at 111. The minutes of that meeting reflect that questions were raised by one member, who opposed the introduction of the ordinance, and that AT&T was to contact

that member regarding his concerns. *Id.* At the August 9 meeting, AT&T asked to postpone consideration of the ordinance until the next meeting. Doc. 18, att. 3, p. 5. The request was approved by unanimous vote. *Id.* At the next regular council meeting, on September 13, 2022, a member moved to adopt the motion but failed to obtain a second. *Id.* at 7. The motion therefore failed and the council president explained that the ordinance was no longer open for discussion. *Id.* On November 3, 2022, AT&T also submitted a commercial building permit application for the cell tower. Doc. 15, att. 2, p. 131. To date there has been no written decision on this application. *Id.* at 6.

On November 18, 2022, AT&T filed a complaint for equitable relief and declaratory judgment in this court. Doc. 1. There it alleged that the city had unlawfully denied and/or failed to timely act on the application, in violation of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 151 *et seq.* AT&T then filed a motion for partial summary judgment, seeking a declaratory judgment that defendants have violated the TCA, directing defendants to grant all permits and approvals necessary to erect the proposed wireless communications tower at the proposed site, and estopping defendants from taking any action to prevent AT&T from constructing and operating the tower at this site. Doc. 15. Defendants have also moved for summary judgment, asserting that AT&T's suit is barred by the 30-day statute of limitations under the TCA and should be dismissed. Doc. 18.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. TCA Violation

The TCA contains "specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of [wireless telecommunications] facilities." *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 293 (2013). Under this statute, a local government must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). The FCC, as the agency charged with implementing the TCA, has clarified that a "reasonable period of time" is "presumptively, 90 days to process personal wireless service facility siting applications requesting collocations and, also presumptively, 150 days to process all other applications." In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B), 24 F.C.R.R. 13994 (2009), at ¶ 32. The agency has further clarified that the 150-day time frame, commonly called the "shot clock," begins to run upon submission of an application. *Id.* at ¶ 13. This ruling "contemplates not just that a local government will take some action on an application within the deadline, but that it will 'resolve [the] application' before the deadline.'" *New Cingular Wireless PCS, LLC v. Town of Stoddard, NH*, 853 F.Supp.2d 198, 203–04 (D.N.H. 2012) (quoting 2009 FCC Order, at ¶ 38).

The shot clock began to run in this matter with the filing of the application on May 25, 2022, and expired on October 22, 2022. AT&T argues that defendants violated the

TCA, § 332(c)(7)(B)(ii), by failing to consider the application any further at their September 13 meeting or at any time since. Defendants maintain, however, that there was no shot clock violation because the ordinance failed by final action at the September 13 meeting and the city council thereby took final action. Doc. 17.

Under the TCA, "[t]he relevant 'final action' is the issuance of the written notice of denial . . . ." *Cap. Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F.Supp.3d 643, 651 (S.D. Ohio 2019) (quoting *T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 305 n. 4 (2015)). The municipality has the prerogative on how to issue the decision and may do so through approved minutes of its governing body. *See id.* at 653 ("The approved Minutes were in writing, and thus, the ratification of the Minutes satisfied the TCA's requirement that the decision be in writing."). To allow the provider to sue, however, the decision must still be a "final action." In the context of the TCA, this is "typically understood as a State or local government agency action that 'mark[s] the consummation of the agency's decision making process and determines rights or obligations or triggers legal consequences.'" *TowerCo 2013 LLC v. Berlin Twp.*, 2023 WL 5334633, at *6 (S.D. Ohio Aug. 18, 2023) (quoting *T-Mobile S.*, 574 U.S. at 305 n. 4) (alteration in original). Where the governing body fails to issue a formal or final denial, there is no final action under the TCA. *See Heritage Broadband, LLC v. City of Bertram*, 2023 WL 3035396, at *2–*3 (W.D. Tex. Mar. 13, 2023) (no final action where counsel allowed item to die with no action).

Defendants analogize this matter to *Grove City*, supra, where the motion to approve an application also "died for lack of a second." 403 F.Supp.3d at 648. The final action,

however, came when the council approved a motion to "postpone indefinitely" that application. *Id.* at 648–49, 653. Here, on the other hand, the minutes only reflect the failure to obtain a second. There is no indication of final denial or indefinite postponement of the motion. Accordingly, it cannot be regarded as the "consummation of the [council]'s decision making process" or as a final action under the TCA. Because defendants have presented nothing to rebut the reasonableness of the TCA's timeline, the court must find that they have violated that statute by failing to resolve AT&T's application. Accordingly, AT&T is entitled to summary judgment.

### B. Statute of Limitations

Before deciding the appropriate relief, the court must consider the limitations defense raised in defendants' motion for summary judgment. The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government" that is inconsistent with the statute's terms may file suit "within 30 days after such action or failure to act." 47 U.S.C. § 332(c)(7)(B)(v). Defendants argue that AT&T is barred by this limitations period because it did not file suit within 30 days of the council's September 13 meeting. As described above, however, the action on the application at that meeting was not a "final action" under the TCA. Instead, the shot clock violation came when the 150-day deadline expired on October 22, 2022. AT&T filed suit within 30 days of that date, making this matter timely under the TCA. Accordingly, defendants' motion for summary judgment will be denied.

## C. Appropriate Remedy

AT&T argues that defendants had no excuse for their failure to act and that AT&T is therefore entitled to injunctive relief, in the form of an order directing defendants to take appropriate steps to approve the application. Defendants contend that if a TCA violation is found, the appropriate remedy is to allow the council to act on the application within a time to be determined by the court. They also argue that no injunctive relief should be granted as to the commercial building permit application, because (1) this was not properly raised in AT&T's complaint and (2) the application was submitted after the council had already rejected the rezoning application.

In general, a plaintiff is entitled a permanent injunction if it shows: "(1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). Here a showing of success on the merits has already been made and so the court proceeds to the remaining factors.

As the FCC warned, "injunctions granting an application may be appropriate in many cases" and local governments risk issuance of such relief if they do not consider applications in compliance with the TCA and FCC Orders. 2009 FCC Order, at ¶¶ 38–39. Remand to the municipality, however, is also an appropriate remedy—particularly for "shot clock" violations. *E.g.*, *Crown Castle Fiber LLC v. City of Charleston*, 448 F.Supp.3d 532, 546 (D.S.C. 2020) ("Instead, the court finds it more appropriate to order the City to render a decision on [defendant's] applications within a specified number of days of this

order, as courts face[d] with similar situations have done."); *see also Verizon Wireless of East LP v. Town of Wappinger*, 2022 WL 282552, at *23 (S.D.N.Y. Jan. 31, 2022); *Up State Tower Co., LLC v. Town of Kiantone, NY*, 2016 WL 7178321, at *7 (W.D.N.Y. Dec. 9, 2016), *aff'd*, 728 F. App'x 29 (2d Cir. 2017). The FCC has implied a preference for remand to the local government on a shot clock violation, declaring that such a violation does "not, in and of itself, entitle the siting applicant to an injunction granting the application." 2009 FCC Order, at ¶ 32 n. 99. "As the Supreme Court has recognized, local zoning authorities are flexible institutions that may give back with one hand what they have taken with the other." *Kiantone*, 2016 WL 7178321, at *6 (quoting *Sprint Spectrum LP v. City of Carmel, Ind.*, 361 F.3d 998, 1004 (7th Cir. 2004)).

Here the motion failed, though not irrevocably, after one member raised questions. There is no indication that a final decision has been reached, or that the member's objections are meritless. Mandating approval of the applications would therefore deprive the council of the opportunity to fairly decide these local issues and disserve the public interest. Instead, the most that AT&T is entitled to at this point is declaratory judgment and an order that defendants render a decision on the application within 60 days of this order. The order does not apply to the commercial building permit, which the court agrees is not currently ripe given the lack of decision on the zoning application.

## IV.
### CONCLUSION

For the reasons stated above, AT&T's Motion for Summary Judgment [doc 15] will be **GRANTED** and defendants' Motion for Summary Judgment [doc. 18] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 22nd day of September, 2023.

*[Signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**